UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMMY JANE KAHLER,<br><br>                    Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>                    Defendant. | Case No. C09-5611RBL-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for October 29, 2010 |

Plaintiff has brought this matter for judicial review of the denial of her applications for disability insurance and supplemental security income ("SSI") benefits by the Commissioner of Social Security (the "Commissioner"). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation to the Court, recommending that for the reasons set forth below, the decision to deny plaintiff benefits be reversed and this matter be remanded to the Commissioner for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is 34 years old. Tr. 56. She has a high school education, a certified nursing assistant certificate and past work experience as a certified nursing assistant. Tr. 19, 36-37, 136, 139. On May 25, 2006, plaintiff filed applications for disability insurance and SSI

REPORT AND RECOMMENDATION - 1

benefits, alleging disability as of November 30, 2005, due to epilepsy, diabetes, anxiety, and depression. Tr. 11, 108, 113, 135.  Her applications were denied initially and on reconsideration. Tr. 11, 56-60. 65, 67.

A hearing was held before an administrative law judge ("ALJ") on March 12, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 32-55.  On April 23, 2009, the ALJ issued a decision, in which he determined plaintiff to be not disabled, finding specifically in relevant part:

(1) at step one of the sequential disability evaluation process,[1] plaintiff had engaged in substantial gainful activity since her alleged onset date of disability, but because she did not engage in such activity for the entire relevant time period, the five-step sequential disability evaluation process would continue;

(2) at step two, plaintiff had "severe" impairments consisting of lower back pain, obesity, high blood pressure, and an affective disorder;

(3) at step three, none of plaintiff's impairments met or medically equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) after step three but before step four, plaintiff had the residual functional capacity to perform light exertional work, with certain additional non-exertional limitations[2];

(5) at step four, plaintiff was unable to perform her past relevant work; and

(6) at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 11-21. Plaintiff's request for review was denied by the Appeals Council on July 30, 2009, making the ALJ's decision the Commissioner's final decision. Tr. 1; 20 C.F.R. § 404.981, §

---

[1] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

[2] "Exertional limitations" are those that only affect the claimant's "ability to meet the strength demands of jobs." 20 C.F.R. § 404.1569a(b).  "Nonexertional limitations" only affect the claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 404.1569a(c)(1).

REPORT AND RECOMMENDATION - 2

416.1481.

On September 30, 2009, plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. (Dkt. #1-#3). The administrative record was filed with the Court on December 15, 2009. (Dkt. #12). Plaintiff argues the decision to deny benefits should be reversed and this matter should be remanded to the Commissioner for further administrative proceedings for the following reasons: (a) the ALJ erred in finding her migraine headaches to be not severe; and (b) the ALJ did not properly consider her bladder dysfunction to be severe or accommodate it in his assessment of her residual functional capacity. For the reasons set forth below, the undersigned agrees the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the Commissioner's decision be reversed and that this matter be remanded for further administrative proceedings. While plaintiff requests oral argument, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

REPORT AND RECOMMENDATION - 3

I.      The ALJ's Evaluation of Plaintiff's Migraine Headaches

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work."  See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).  The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

As noted above, the ALJ found plaintiff's lower back pain, obesity, high blood pressure, and affective disorder to be severe impairments. Tr. 13.  The ALJ also found plaintiff's migraine headaches were non-severe, stating specifically in relevant part:

> . . . The claimant complained to Marlene Dietrich, M.D., a neurologist, about migraine headaches; she stated she would often wake with a headache. Ibuprofen was prescribed to treat her headaches, which the claimant stated helped. Exhibits 14F/1, 3. . . .

Tr. 14.  The ALJ further stated he found plaintiff's migraine headaches to be non-severe, because they were "treated with medication and therefore, [did] not cause limitations having more than a minimal effect on [her] ability to perform basic work activities." Id.

REPORT AND RECOMMENDATION - 4

Plaintiff argues the above discussion does not show the ALJ adequately considered the evidence in the record related to her migraine headaches.  The undersigned agrees.  Defendant argues that because plaintiff's credibility was crucial to the determination as to the reliability of the alleged severity of her migraine headaches and the existence of any work-related limitations stemming therefrom, and because plaintiff has not challenged the ALJ's credibility determination in this case, the ALJ's finding of non-severity here should be upheld.  But nowhere either in the ALJ's step two discussion or discussion of the medical evidence in the record in general, did the ALJ expressly consider any evidence relating to plaintiff's headaches and the effect medications had thereon, other than the one mention noted above.

As pointed out by plaintiff, furthermore, the record is far more ambiguous regarding the impact plaintiff's various medications had on her migraine headaches than the ALJ's analysis would indicate.  Indeed, it appears the severity of plaintiff's migraine-related symptoms waxed and waned over time depending on the medication she took and the actual access she had thereto.  See Tr. 222, 224, 226, 266, 285, 289, 291, 335-38, 340, 343, 378, 390-92, 405, 430, 445, 456, 465, 469, 472, 480-81, 484-85, 524-25, 528, 539-40, 547-48.  In other words, it is not at all clear that the medical evidence in the record supports a finding of non-severity, and the ALJ's one reference to plaintiff's report regarding the helpfulness of ibuprofen and his general statement that the migraine headaches were "treated with medication," provide insufficient support for this step two finding.  See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (insufficient for ALJ to reject physician opinion by merely noting, without more, lack of objective medical findings in record to support it).

As for the ALJ's adverse credibility determination, although plaintiff has not challenged it (at least not in her opening brief) – and, therefore, the undersigned will not overturn it – again,

REPORT AND RECOMMENDATION - 5

nowhere in the ALJ's discussion of plaintiff's credibility did he mention the migraine headaches or the medications plaintiff took for them. See Tr. 17-18. To find "allegations of severity to be not credible," the ALJ "must specifically make findings which support this conclusion." Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991). In addition, "[t]hese findings, properly supported by the record, must be sufficiently specific to allow" the Court to conclude the ALJ "rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (citation omitted) ("[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain."). To the extent the ALJ did reject plaintiff's reports and testimony concerning the limiting effects of her migraine headaches in this case, the lack of any discussion thereof in his decision leaves the Court to speculate as his actual reasons for doing so.

II.     The ALJ's Evaluation of Plaintiff's Bladder Dysfunction

In terms of plaintiff's bladder dysfunction, the ALJ found as follows:

> According to the treatment records, the claimant had bladder surgery as a child. Exhibit 14F/10. In 2007 the claimant developed urinary hesitancy/obstruction and was referred to a urologist specialist. Hydrochlorothiazide was prescribed. However, the etiology was unclear, as indicated by a diagnostic cystoscopy. The claimant was advised to maintain her bladder with intermittent catheterization. It was suggested by the claimant's treating provider that her prescription medications could be contributing to her symptoms. An abdominal ultrasound was normal. Urinary tract infections were sporadically diagnosed. Exhibits 14F/4, 15F/1, 3, 18F/120-121, 147, 155. I similarly find that the claimant's bladder problems are non-severe. No definitive diagnosis has been indicated by objective testing in the record concerning this impairment, although there is evidence that the claimant was advised to use intermittent catheterization. The limitations cause [sic] by this impairment have no more than a minimal impact on the claimant's ability to perform an eight-hour, forty-hour workweek. However, I will consider the claimant's need to have a ready access restroom.

Tr. 14. The undersigned agrees with plaintiff that the ALJ erred in stating her bladder problems were non-severe. Indeed, the ALJ went on to expressly state in that same paragraph that while

REPORT AND RECOMMENDATION - 6

that impairment had no more than a minimal impact on her ability to perform full-time work, she nevertheless would consider her "need to have a ready access restroom," and even included this as a limitation in his assessment of her residual functional capacity. See Tr. 17.  The ALJ's own findings, therefore, indicate he believed plaintiff's bladder dysfunction would have at least some impact on her ability to perform work.

Despite that finding, the ALJ did not then go on to discuss what exactly he meant by the need to have a ready access restroom.  This is a vocationally relevant issue.  For example, at the hearing, the ALJ admitted that he was not entirely sure what he meant by the term "ready access" in regard to frequency of use. See Tr. 51-52 (stating his assumption that restroom could be used during normal (i.e., morning, lunchtime and afternoon) breaks, "[a]nd perhaps other times, I'm not sure").  In response to the ALJ's further inquiry as to at what point did "the frequency of restroom breaks interfere with the type of jobs" identified by the vocational expert that plaintiff could do given her age, education, past relevant work and residual functional capacity as found by the ALJ (see Tr. 50), that expert testified in relevant part that:

> Well, in addition to the normal break periods, people certainly are allowed to use the restroom.  I think it depends on the number of times, and also the duration of time spent in the restroom.  Generally it would start to interfere with productivity levels if it exceeds more than several times in the morning and the afternoon of a typical day, in addition to the normal break times.  And then again it depends on the duration of time that is spent in the restroom.
>
> . . .
>
> . . . [T]he longer the time away from the work site, the less production is going on.  So then that would lead to problems with sustaining competitive employment.

Tr. 52.  The vocational expert also testified that "for pretty much all of" the jobs he identified, an individual would first need to have another worker "cover" him or her while he or she was in the restroom, otherwise it "would be more problematic." Tr. 53.

REPORT AND RECOMMENDATION - 7

The record shows that in early June 2007, plaintiff reported having begun "intermittent self catheterization." Tr. 348. In late July 2007, she reported she was "doing self-catheterization three times per day." Tr. 334. In early December 2008, she was noted as having had to "self-cath[eterize] herself for about a year," although no mention of the frequency with which she had to do so was made. Tr. 382. In late January 2009, plaintiff wrote a note in which she stated she had to self-catheterize four times a day. See Tr. 198. At the hearing, she again testified that she had catheterize herself four times a day for "about 15 minutes" each time. See Tr. 40.

Nevertheless, the ALJ did not address any of this evidence in his decision, let alone give any specific reasons for rejecting it, even though, as discussed above, he did consider her need to have a ready access restroom. The reasons the ALJ gave for finding plaintiff less than credible while perhaps valid, did not, also as discussed above in regard to plaintiff's migraine headaches, at all touch upon the number and length of times she reported on several occasions that she had to self-catheterize. Accordingly, the Court again must speculate as to why the ALJ did not adopt that evidence, or what exactly he meant by including in his assessment of plaintiff's residual functional capacity a need to have ready access to a restroom. As such, remand is necessary for further consideration of this issue in light of all of the evidence in the record, as it is in regard to plaintiff's migraine headaches for the reasons set forth above.

III.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

REPORT AND RECOMMENDATION - 8

unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain in regard to the evidence in the record regarding the severity of plaintiff's migraine headaches and bladder dysfunction, as well as the impact of those impairments on her residual functional capacity and ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to the Commissioner in order to conduct further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled, and should reverse the ALJ's decision and remand this matter to the Commissioner for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474

REPORT AND RECOMMENDATION - 9

1  U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is

2  directed set this matter for consideration on **October 29, 2010**, as noted in the caption.

3        DATED this 7th day of October, 2010.

                                              Karen L. Strombom  
                                              United States Magistrate Judge

REPORT AND RECOMMENDATION - 10